IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **INGRID VINASCO, individually and on behalf of similarly situated individuals** § § § § | |
| **Plaintiff,** § § | |
| v. § | CIVIL ACTION NO. 4:20-cv-03575 |
| § § | |
| **F&E AIRCRAFT MAINTENANCE, LLC** § § § | |
| **Defendant,** § | |

## ORIGINAL COMPLAINT

### SUMMARY

1. Defendant, F&E AIRCRAFT MAINTENANCE, LLC ("FEAM"), employs Cabin Interior Maintenance workers at their home facility on an hourly rate but subjects them to automatic lunch deductions while still requiring them to work.

2. FEAM subjects Plaintiff and the Cabin Interior Maintenance workers to time shaving by adjusting the clock in time to show less or no overtime.

3. When FEAM sends Plaintiff and the Cabin Interior Maintenance workers to work out of town, they pay them a day rate and no overtime.

4. When FEAM sends Plaintiff and the other Cabin Interior Maintenance workers on out of town projects, they regularly work more than forty (40) hours in a workweek, Defendant does not pay them overtime.

5. Defendant's policy of paying these employees a day-rate with no overtime pay violates the Fair Labor Standards Act ("FLSA").

6. This collective action seeks to recover the unpaid wages, liquidated damages, and other damages owed to these workers, together with attorneys' fees, interest, and costs of these proceedings.

## JURISDICTION & VENUE

7. This case raises a federal question under 29 U.S.C. § 216(b), giving this Court original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(1) because Defendant conducts substantial business in this District, sending Plaintiff and Class members to perform work in this District while subjecting them to Defendant's improper and illegal payroll practices.

## PARTIES

9. Ingrid Vinasco was employed by Defendant as an hourly employee. Ingrid Vinasco is domiciled in Texas and performed work out of Defendant's Houston, Texas facility as a Cabin Interior Maintenance worker. Ingrid Vinasco's written consent to this action is attached. (Exhibit A)

10. Defendant F&E AIRCRAFT MAINTENANCE, LLC ("FEAM") is a domestic limited partnership doing business in the State of Texas. Defendant may be served through its registered agent Corporate Creations, 4265 San Felipe, Suite 1100, Houston, Texas 77027.

## FACTS

11. FEAM is an Aviation Maintenance business. FEAM delivers "technical services for all commercial aircraft operators." http://feam.aero/about-us/

12. FEAM is not an airline.

13. Ingrid Vinasco worked for Defendant as a "Cabin Interior Maintenance" worker.

14. FEAM hired Plaintiff and other Cabin Interior Maintenance workers ("Class Members") to maintain the interiors of the airplanes. Some of the job duties performed by Plaintiff and the Class Members included repairs such as changing seat covers, changing light bulbs, replacing coffee makers, fixing leaking faucets, fixing Aircraft Cabin Lighting, and information signs.

15. Plaintiff and the other Class Members routinely handled goods or materials – such as interior cabin components (light bulbs, entertainment systems, cabin trim, carpet, flooring, sidewalls, window shades, privacy curtains) bathroom components (bathroom doors, faucets, toilets, cabinets, seat covers) and parts for Galleys (oven, coffee makers, faucets, water filters, water boilers, and trash receptacles), that have moved in, or were produced for, interstate commerce.

16. Plaintiff and the other Class Members' daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by Defendant and/or its clients. Virtually every job function was predetermined by Defendant, including the tools to use at a job site, the schedule of work, and related work duties. Plaintiff and the other Class Members were prohibited from varying their job duties outside of the predetermined parameters. Moreover, Plaintiff and the other Class Members' job functions were primarily technical and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

17. The airplanes that Plaintiff and the Class Members worked on were used by FEAM to conduct interstate commerce and transporting airline customers to transport passengers and cargo on interstate trips.

18. FEAM operates in many airports in Texas, Florida, and other states; Washington, California, Arizona, Colorado, Alaska, Illinois, Kentucky, Ohio, Virginia, Maryland, New York, South Carolina, Georgia, and Alabama. http://feam.aero/



http://feam.aero/clients/

19. In each of the past three (3) years, Defendant's gross revenue has exceeded $500,000.00.

20. All-time keeping records were done on software called ADP. Any time edits to reduce overtime hours can be tracked through FEAM's timekeeping software.

21. Over the past three (3) years, Defendant employed dozens of individuals – including Ingrid Vinasco as "Cabin Interior Maintenance" and the other Class Members ("Class Members") to maintain airplanes owned and operated by its customers nationwide.

22. Defendant required Plaintiff and Class Members to work 10.5-hour days.

23. Defendant routinely scheduled Ingrid Vinasco and the other class members to work full time. Defendant scheduled Ingrid Vinasco and the other class members for as many as six (6) days in a workweek.

## I. FOUR TYPES OF OVERTIME VIOLATION

### A. DAY RATE- NO OVERTIME

24. FEAM had projects where they had to send Plaintiff and Class Members to work on customer airplanes for weeks at a time.

25. When FEAM sends Plaintiff and Class Members out of town, they pay them a day rate and no overtime.

26. FEAM did not keep track of the hours worked by the Plaintiff and Class Members when they worked out of town.

27. When FEAM sends Plaintiff and Class Members on out-of-town projects, they regularly work more than forty (40) hours in a workweek, and Defendant does not pay them overtime.

28. Plaintiff and Class Members usually would work 7 a.m. to 7 p.m., go to the hotel and come back to work the next day.

29. On one work trip, FEAM had Plaintiff and Class Members work for 28 days straight in Phoenix, Arizona, with no days off and no overtime.

### B. TIME SHAVING

30. When Plaintiff and Class Members worked in Houston, Texas, FEAM would pay them by the hour and require them to clock in and out each day.

31. FEAM subjects Plaintiff and Cabin Interior Maintenance workers to time shaving by adjusting clock-in time to show less or no overtime. Any adjustments in the workers' times can be easily identified by the time edit logs in FEAM's timekeeping software.

32. When Plaintiff complained about the time shaving, FEAM threatened with disciplinary action and fired her.

### C. THE "ROUNDING" IN THE EMPLOYER'S FAVOR

33. Defendant has a rule that if you clock in 1 minute late, they will deduct 30 minutes from your time.

34. FEAM's time clock rounds to the nearest 30 minutes to show fewer work hours.

35. FEAM usually assigns Plaintiff and Class Members to start their shift at the top of the hour.

36. Every time the Plaintiff or Class Members clocks in one minute or more after the top of the hour, FEAM rounds their clock in time forward to the bottom of the hour (30 minutes later). This practice means the Plaintiff and Class Members do not get credit for work done after they clock in until the bottom of the hour. This can result in up to 28 to 29 minutes rounded off their hours worked for that shift.

37. For example, if FEAM employs Plaintiff and the other Class Members to work from 6:00 a.m. to 4:30 p.m., any of their clock in time between 6:01-6:29 a.m. will be rounded to 6:30 a.m. Plaintiff and the other Class Members would have to work for free until 6:30 a.m.

38. If Plaintiff or Class Members clock-in before their start time, FEAM would round their clock-in time to the top of the hour when their shift was supposed to start.

39. For example, if Plaintiff worked 6:00 a.m. to 4:30 p.m., and clocked in 10 minutes early at 5:50 a.m., the Defendant would round the clock-in time to 6:00 a.m. Plaintiff and the other Class Members would have to work for free until 6:00 a.m.

40. Defendant's intentional default settings to the AE time management system cause the system to automatically "round forward" clock-in times to the nearest half-hour.

41. Furthermore, even if "rounding" auto-deduction policies are not per se unlawful, Defendant has intentionally implemented default settings to ensure that the "rounding" of time is always to the sole benefit of the employer and always to the detriment of Plaintiff and Class Members.

**D.     THE "THIRTY-MINUTE" AUTO-DEDUCTION FOR MEAL BREAKS**

42. When Plaintiff and the Class Members work in Houston, Defendant maintains time records using ADP service and a timeclock that is located in the warehouse next to the supervisor's office.

43. The FEAM warehouse is in a building separate from the airline terminals.



44. When an airplane lands and pulls into the gate, they sometimes have minor interior repairs that must be done by FEAM.

45. FEAM sends the Plaintiff and Class Members to the terminals where the airplanes are parked.

46. To reach the airplanes, the Plaintiff and Class Members must drive vehicles to the assigned terminal and gate. There is a 15-mph speed limit in the areas between FEAM's warehouse and the gates. It can take 20-30 minutes to commute between the FEAM warehouse and the gates where the airplanes are located.

47. If Plaintiff or the Class Members are working inside the airplane parked at a gate, they will not have time to drive back to the FEAM warehouse, get their food, eat it and return to the airplanes within the allotted 30-minute meal break.

48. FEAM is aware that that the Plaintiff and Class Members cannot travel from their respective airport gates back to FEAM's break room, eat and back to their assigned gates within a 30 minute lunch break.

49. FEAM automatically deducts 30 minutes from the time records of each shift that Plaintiff and the Class Members work. In a typical 10.5-hour shift, the automatic lunch break takes the hours worked from 10.5 to 10 hours per shift.

50. Defendant regularly scheduled Plaintiff and the Class Members for workweeks consisting of four 10.5-hour days for four days on and three days off. However, the Plaintiff and Class Members frequently worked over 10.5 hours a day.

51. The Plaintiff and the Class Members had many occasions where they were working during their meal breaks. Often, the Plaintiff and the Class Members did not have a full 30 minute meal break.

52. Some of the reasons for the Plaintiff and the Class Members had to work during their meal break are the high workload and the unpredictable time of arrival of the airplanes.

53. If a plane pulls into the gate, the Plaintiff and the Class Members have to be present and work on any minor interior repairs even if it was during their meal breaks.

54. The FEAM supervisor had a right to deny Plaintiff and Class Members breaks while subjecting them to automatic lunch break time deductions.

55. The FEAM supervisors had, on occasion, exercised their supervisory rights and denied the Plaintiff and Class Members to take a break from work and return to the warehouse for their meal break.

56. Defendant's intentional failure to credit Plaintiffs and Class Members for all of their hours worked occurred in the form of Thirty-Minute Auto-Deduction.

57. Defendant has implemented and continue to follow a time management policy of "auto-deducting" 2.5 hours per workweek, or more specifically, thirty (30) minutes from each

workday, from the timesheet of every Cabin Interior Maintenance within its employ, including the Plaintiff and the Class Members, before issuing payment for wages.

58. Defendant has not provided any written policies or procedures to Plaintiff and the Class Members to inform them that they are auto-deducting time and the purpose of the auto-deduction.

59. Plaintiff and Class Members presume that the auto-deductions are for meal periods, but Defendant has not provided evidence of such a policy to the Plaintiff and Class Members, either through the employee handbook, training, or any supplemental distributed materials.

60. Defendant has failed to provide the Plaintiff and the Class Members any breaks or bona fide meal periods where they are not required to be actively working or where they are completely relieved of their duties for the purposes of eating without interruption.

61. Defendant's employee handbook does not provide any policies relating to breaks or bona fide meal periods, and there exists no written policies or procedures that Defendant published informing Plaintiff and the Class Members of any right to breaks or meal periods "off-the-clock".

62. Defendant knew Plaintiff and Class Members worked through lunch through verbal complaints, or constructively aware of the fact due to understaffing, that Plaintiff and the Class Members rarely, if ever received their full meal breaks, yet Defendant still enjoyed these benefits without compensating Plaintiff and the Class Members for it.

63. If this thirty-minute auto-deduction was not for a bona fide meal period, but instead used as an assumption that Defendant's employees will have a certain amount of "down" time, Plaintiff and the Class Members must still be compensated for that time in which they are still on

duty, they are not relieved of their duties to do so as they wish and are not relieved for a specified time.

64. Defendant requires the Plaintiff and the Class Members to remain actively working or on "standby" and engaged to wait for planes throughout their entire 10.5 plus hours daily shifts as the planes arrive at various times in the airport terminals, preventing any uninterrupted breaks or meal periods.

65. Defendant has at all times material hereto, intentionally managed Cabin Interior Maintenance staffing levels to ensure that the Plaintiff and the Class Members work continuously providing aircraft fueling services during their entire workday hourly shifts of 10.5 hours without providing for the scheduling or staffing of Cabin Interior Maintenances for the purpose of relieving other Cabin Interior Maintenances, including the Plaintiff and the Class Members so that they can reasonably take breaks or bona fide meal periods.

66. Defendant's policy of refusing to pay regular and/or overtime wages illegally requires all Cabin Interior Maintenances, including the Plaintiff and the Class Members, to work 2.5 hours per workweek without compensation ("for free") since the Defendants do not pay the Cabin Interior Maintenances their regular hourly rate or their overtime hourly rate (1 ½ time their regular hourly rate) for the 2.5 overtime hours that Defendant requires all Cabin Interior Maintenances to work per workweek due to this thirty-minute auto deduction.

67. The Defendant's intentional conduct can be even further inferred by the fact that Defendant does not provide the Plaintiff and Class Members the ability to monitor their timesheets from a remote computer or location even though that is a basic application within the ADP time-management systems. Defendant only allows Plaintiff and Class Members to access their timesheets upon a request to a manager who must log in for them from a work computer. Defendant

either fails to pay for the basic function of allowing employees to check their timesheets online, or Defendant does not provide their employees with log-in information to access such information. Either way, Defendant's actions are intentional and for the sole purpose of protecting Defendant's auto-deduction schemes from being reported, and thus to maximize profits.

68. While Defendant did pay Plaintiff and Class Members for some hours worked up to and in addition to the 40 hours worked, they failed to pay for all of the off-the-clock hours worked, based upon (a) the auto-deduction of 30 minutes for each work shift, without providing any meal breaks where they were not on standby nor on any other break which would warrant such a deduction, and (b) the rounding auto-deductions which only credited Plaintiff and Class Members for their schedule – as opposed to actual – hours which they were actively working for the benefit of the Defendant.

69. Defendant's policy of scheduling the Cabin Interior Maintenances workers, including the Plaintiff and Class Members, for a workweek of 42.5 hours without any breaks or meal periods, without staffing additional Cabin Interior Maintenances necessary to provide any breaks or meal periods, without any policy or rules requiring Cabin Interior Maintenances to take breaks or meal periods away from their work or "off-the-clock," evidences the Defendant's intentional and willful "cost engineering" of the work schedules which, were cleverly designed and intended to provide the Defendant with at least 2.5 hours of extra, unpaid work from each and every Cabin Interior Maintenance workers for each and every workweek worked.

70. Plaintiff brings this action to recover unpaid regular and/or overtime wages that Defendant owes to Plaintiff, as well as the unpaid regular and overtime wages that Defendant owes to all Class Members for (3) years before the filing of this Complaint.

71. Plaintiff and Class Members are not otherwise exempt from the overtime wage payment requirements of the FLSA.

72. By the actions alleged herein, Defendant has willfully, knowingly, and/or recklessly violated the provisions of the FLSA and corresponding federal regulations.

73. Defendant's willful and intentional actions, both in the past and continuing, constitute a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by endeavoring to prevent the proper compensation of all Cabin Interior Maintenances, including Plaintiff and Class Members, in accordance with § 206 and § 207 of the FLSA.

74. As a result of the Defendant's violations of the FLSA, Plaintiff and Class Members have suffered damages in the form of unpaid regular and/or overtime wages that Defendant was required to pay all Cabin Interior Maintenances in accordance with § 206 and § 207 of the FLSA.

75. Defendant has not made a good faith effort to comply with the FLSA with respect to its failure to compensate properly the Plaintiff and Class Members.

76. As a result of the unlawful acts of the Defendant, Plaintiff and Class Members for the past three (3) years preceding the filing of this action have been deprived of regular and/or overtime compensation in an amount to be determined at trial, and Plaintiff and Class Members are entitled to recover their unpaid compensation plus an equal amount of liquidated damages as well as their attorney's fees and costs pursuant to 29 U.S.C. § 216(b) along with all other relief to which they are entitled in law or equity.

77. Plaintiff has retained the undersigned attorney to represent the interests of the Plaintiff and Class Members and has agreed to pay him a reasonable attorney fee for prosecuting this action.

78. Defendant knew or should have known that it was in violation of FLSA.

79. The reason for this is that Defendant was aware of the work demanded of the Plaintiff and Class Members as airplanes are scheduled to arrive throughout the duration of each shift and are oftentimes arrive earlier or later than their planned time. This makes scheduling employee meal breaks difficult if not impossible.

80. Defendant, through its managers and supervisors, is in sole control of Defendant's payroll practices.

81. Defendant, through its managers and supervisors, was solely responsible for training the Plaintiff and the putative class.

82. Defendant, through its managers and supervisor, has the sole authority to hire, fire, and discipline Plaintiff and the putative class.

83. Plaintiff and the Putative Class wear uniforms identifying them as Defendant's employees.

84. FEAM denied Plaintiff overtime pay as a result of a widely applicable, illegal pay practice. Plaintiff regularly worked in excess of 40 hours a week on out-of-town trips and never received overtime compensation. Instead of paying overtime, FEAM paid Plaintiff a day-rate for all hours work. When she worked in town, FEAM denied her overtime by shaving her overtime, rounding her time, and using automatic deductions for meal breaks while she was still working. FEAM applied this pay practice despite clear and controlling law that states that the manual labor/technical duties which were performed by Plaintiff consist of non-exempt work.

### COLLECTIVE ACTION ALLEGATIONS

85. Plaintiff incorporates all previous paragraphs and alleges that the illegal pay practices FEAM imposed on Plaintiff was similarly imposed on the Class Members.

86. Ingrid Vinasco brings this claim under Section 216(b) of the FLSA as a collective action.

87. The same policy that caused Ingrid Vinasco to be denied her overtime pay caused Defendants' other Cabin Interior Maintenance workers to be denied their overtime pay.

88. While the precise job duties performed by the Class Members may somewhat vary, these differences don't matter for the purposes of determining their entitlement to overtime.

89. Nor do any differences in job duties matter for determining whether Defendants' policy of not paying day-rate workers overtime is legal.

90. The members of the Class are all entitled to overtime for all hours worked over forty (40) in a workweek consistent with the overtime requirements of the FLSA.

91. Because Defendant uniformly failed to pay overtime to all Cabin Interior Maintenance workers, Ingrid Vinasco and the Class Members are similarly situated within the meaning of 29 U.S.C. § 216(b).

92. Upon information and belief, Defendant employed numerous employees like Ingrid Vinasco during the past three (3) years.

93. Nearly all of the questions related to Ingrid Vinasco and the Class Members can be answered on a collective basis.

94. Defendant's practice of paying day-rates and not paying members of the Class Members overtime is based on established companywide policies.

95. Defendant's use of automatic deductions for meal breaks is based on established companywide policies.

96. Defendant's use of rounding clock-in time to the nearest hour or half-hour is based on established companywide policies.

97. Defendant's payroll, time edit logs, and time-keeping records would permit accurate calculation of damages with respect to each member of the Class.

98. The most important questions presented in this case can be resolved on a collective-wide basis.

99. Absent a collective action, many members of the Class likely will not obtain redress of their injuries and Defendants will retain the proceeds of its violations of the FLSA.

100. Furthermore, individual litigation would be unduly burdensome to the judicial system.

101. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

### COLLECTIVE DEFINITION

102. Plaintiff brings this lawsuit pursuant to Section 216(b) of the FLSA as a collective action on behalf of:

> All Cabin Interior Maintenance workers employed by FEAM in the last three (3) years.

### VIOLATION OF THE FLSA

103. Plaintiff and Class Members incorporate the proceeding paragraphs by reference.

104. At all relevant times, Defendant has been employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

105. Defendant employed Ingrid Vinasco and each member of the Class.

106. Defendant's pay policy denied Ingrid Vinasco and the Class overtime compensation as required by the FLSA.

107. Defendant's failure to pay Ingrid Vinasco and the Class overtime at rates not less than one and one-half times their regular rates violate 29 U.S.C. § 207.

108. Defendant's conduct, as described herein, was in willful violation of the FLSA.

109. Due to Defendant's FLSA violations, Ingrid Vinasco and the Class are entitled to recover from Defendants their unpaid overtime compensation, liquidated damages, reasonable attorney fees, costs, and expenses of this action.

**PRAYER**

**WHEREFORE**, Ingrid Vinasco prays for relief as follows:

110. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Class to permit them to join this action by filing a written notice of consent;

111. Judgment against Defendants, FEAM, awarding Plaintiff and the other Class Members all unpaid overtime compensation, liquidated damages, attorneys' fees, costs, and expenses under the FLSA;

112. Pre- and post-judgment interest at the highest rate allowable by law; and

113. All such other and further relief to which Plaintiff and the other Class Members may show themselves to be justly entitled.

Respectfully Submitted,

/s/ Trang Q. Tran
Trang Q. Tran
TRAN LAW FIRM
2537 S. Gessner, Suite 104
Houston, Texas 77063
Telephone: (713) 223-8855
Facsimile: (713) 623-6399
trang@tranlf.com
service@tranlf.com

**ATTORNEY FOR PLAINTIFF and CLASS MEMBERS**